UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,                                  **OPINION & ORDER**

        - against -                                                                   24-CR-99 (AMD)

XINYUE DANIEL LOU,

                              Defendant.
-------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On September 9, 2025, this matter was referred to the undersigned for jury selection. In connection with jury selection, Defendant Xinyue "Daniel" Lou moves *in limine* to permit the Court to show an "implicit bias video" to prospective jurors and to permit "attorney-led *voir dire*." Dkt. No. 36 at 10-12;[1] *see also* Dkt. No. 40 at 1 n.2; Dkt. No. 40-2. The Government opposes Defendant's motion. Dkt. No. 45. A hearing was held on September 29, 2025 before the undersigned. For the reasons set forth below, the Court **DENIES** Defendant's motion to permit the showing of an implicit bias video to the prospective jurors and to permit attorney-led *voir dire*.[2]

I. **Background**

Defendant is charged in a two-count indictment with conspiring to defraud the United States, in violation of 18 U.S.C. §§ 371 and 3551 *et seq.* (Count One), and making political contributions in the names of others, in violation of 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 and 3551 *et seq.* (Count Two). *See* Dkt. Nos. 1, 21. According to the Government, Defendant attended a Florida fundraiser for President Donald Trump in March 2019. Dkt. No. 25 (citing Dkt. No. 20-1 at 7.). Per the Government, "[t]he charges arise from

---

[1] Page citations are to the ECF-stamped pages unless otherwise noted.

[2] All motions *in limine* not related to jury selection will be decided by presiding U.S. District Judge Ann M. Donnelly.

[Defendant's] participation in a plan to recruit individuals to make financial contributions to a political fundraising committee and then to reimburse those individuals for the contributions—criminal conduct commonly known as a 'straw donor' scheme." Dkt. No. 21 at 3. The Government alleges that these reimbursements exceeded $25,000 in the aggregate in violation of federal campaign finance law. Dkt. No. 25 (citing Dkt. No. 20-1 at 7.). Defendant denies the allegations and has pleaded not guilty to both charges. Dkt. No. 40 at 3.

## II. Implicit Bias Video

Defendant seeks to have the prospective jurors be shown a video on implicit bias made by the U.S. District Court for the Western District of Washington ("the Video") during the *voir dire* process. *See* Dkt. No. 36 at 16. The Government opposes the request. Dkt. No. 45.

The Supreme Court and the Second Circuit have found that district courts "have been accorded ample discretion in determining how best to conduct the *voir dire*." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981); *United States v. Treacy*, 639 F.3d 32, 46 (2d Cir. 2011) (quoting *United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007)). As the Supreme Court has long stated, jury selection "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Mu'Min v. Virginia*, 500 U.S. 415, 422 (1991) (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). And the United States Court of Appeals for the Second Circuit has reiterated this discretion afforded to the district court in managing the *voir dire* process, reviewing the decision only for a "clear abuse of discretion." *Quinones*, 511 F.3d at 299 (2d Cir. 2007). The district court's broad discretion encompasses the liberty to structure the components of the process as it sees fit, as there is "[n]o hard-and-fast formula [that] dictates the necessary depth or breadth of *voir dire*." *See Skilling v. United States*, 561 U.S. 358, 386 (2010).

Here, upon review of the Video and the parties' arguments, the Court finds that inclusion

2

of the Video is unnecessary to ensure that Defendant's constitutional rights are adequately protected. Defendant has failed to establish why the Video needs to be shown to prospective jurors in this case, especially given the detailed and thorough *voir dire* plan discussed with the parties at the September 29, 2025 pre-trial conference. *See United States v. Ayala*, 64 F. Supp. 3d 446, 452 (E.D.N.Y. 2014) (Bianco, J.) (explaining that the issue of whether a prospective juror possesses disqualifying, potential bias "is best determined during or after *voir dire* examinations.") (quoting *United States v. Volpe*, 42 F. Supp. 2d 204, 218 (E.D.N.Y. 1999) (Nickerson, J.)); *see also United States v. Diaz*, 854 F. App'x 386, 389-90 (2d Cir. 2021) (finding "[t]herefore, '[w]e do not minimize the importance to criminal defendants of removing the possibility of racial bias on the jury,' but rather re-emphasize that '[h]ow best to do that . . . is primarily left to the broad discretion of the district court.'") (quoting *United States v. Taylor*, 92 F.3d 1313, 1324 (2d Cir. 1996)). At bottom, showing the Video is not necessary to protect Defendant's right to a fair and impartial jury under the Sixth Amendment.

Moreover, the Court agrees with the Government that by showcasing the Video, it may "improperly highlight[] one instruction over all other instructions." Dkt. No. 45 at 17. "While there is undoubtedly value in making jurors aware of unconscious bias, to do so through the [Video] seems more likely to cause jurors to focus heavily on a single aspect of their duty as jurors at the expense of others that are equally as important." *United States v. Jessamy*, 464 F. Supp. 3d 671, 678 (M.D. Pa. 2020) (Mannion, J.) (rejecting the use of the Video in *voir dire*).

Finally, while Defendant points to three criminal cases in this district where the Video was shown, there have been myriad other criminal cases in this district where the Video was *not* shown, without any hindrance on the criminal defendant's constitutional rights. Indeed, as the Government notes, courts in this District have repeatedly declined to show the Video. *See, e.g.,*

*United States v. Green*, No. 22-3217, 2024 WL 4488577, at *3 (2d Cir. Oct. 15, 2024) (Sullivan, Leval, Merriam, C.J.) (finding that refusing to show prospective jurors a video on implicit bias and failing to ask them questions about racial bias did not amount to an abuse of discretion); Dkt. No. 45 at 16-17 (collecting cases); *see also United States v. Mercado-Gracia*, 989 F.3d 829, 840 (10th Cir. 2021) (noting that the district court's decision to not show the Video was not an abuse of discretion).

Accordingly, the Court denies Defendant's request to play the Video during *voir dire*. As discussed at the September 29, 2025 conference, the parties may, however, propose language concerning implicit or unconscious bias to the Court for consideration, which the Court may then state during the *voir dire* process. The parties shall jointly file any proposed language for the Court to consider in this respect by October 3, 2025, at 12:00 p.m.

### III. Attorney-Led *Voir Dire*

Defendant also requests that the Court "authorize attorney-conducted, individualized, sequestered *voir dire*" to permit counsel to conduct a "searching inquiry" into issues of "pretrial publicity, potential hardship, and pre-judgment as to Chinese Americans, allegations of foreign involvement in United States elections, and people who support and fundraise for President Trump." Dkt. No. 36 at 17. The Government opposes this request as well. Dkt. No. 45.

Federal Rule of Criminal Procedure 24(a)(1) provides that "[t]he court may examine prospective jurors *or* may permit the attorneys for the parties to do so." Fed. R. Cr. P. 24(a)(1) (emphasis added). But as the Second Circuit has noted, the "[c]ourt and counsel have somewhat different goals in *voir dire*." *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002). "The court wants a fair and impartial jury to be chosen and to move expeditiously to the presentation of evidence[;] [c]ounsel want a jury favorable to their cause—fair or not—and *voir dire* aids them in

exercising peremptory challenges and challenges for cause." *Id.* Counsel also have "an additional purpose in *voir dire*," namely, "exposing jurors to various arguments they intend to make at trial." *Id.* "Counsel view *voir dire* as an opportunity for advocacy similar to, albeit not the equivalent of, openings or summations," which has led to a "long struggle between bench and bar . . . in which the bar has sought the right to question jurors at great length." *Id.* (collecting cases). Federal courts have thus far "successfully resisted such attempts." *Id.* (citations omitted).

In the Second Circuit, the general view is that "examination by the court is the preferable practice and . . . it results in great savings of time and improves the character of the examination." *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022) (quoting 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 380 (4th ed. 2025)); *see, e.g.*, *United States v. Aguilar*, No. 20-CR-390 (ENV) (JAM), 2023 WL 8722466, at *2 (E.D.N.Y. Dec. 19, 2023) (denying request for attorney-conducted *voir dire*); *United States v. Sims*, No. 21-CR-596 (CBA) (TAM) (Nov. 29, 2023) (oral order denying the defendant's request for attorney-conducted *voir dire*); *United States v. Golfo*, No. 19-CR-95 (KAM), 2020 WL 2513445, at *7 (E.D.N.Y. May 15, 2020) (denying request for attorney-led *voir dire*); *United States v. Saipov*, No. 17-CR-722 (VSB), 2020 WL 958527, at *1 (S.D.N.Y. Feb. 27, 2020) (same); *United States v. Barone*, No. 09-CR-91 (NRB), 2010 WL 2976505, at *1 (S.D.N.Y. July 9, 2010) (same). The eminent Judge Edward Weinfeld opined that based on "more than three decades of judicial service," he was "persuaded beyond peradventure of doubt" that court-led *voir dire* "without exception, has resulted in the empanelling of fair and impartial juries . . . selected expeditiously and with full protection of a defendant's constitutional right to an impartial jury" even in cases involving "the widest publicity in the news media over extended periods of time." *United States v. Wilson*, 571 F. Supp. 1422, 1428 (S.D.N.Y. 1983).

Defendant fails to persuasively argue that attorney-conducted *voir dire* is merited here. Defendant states, in pertinent part, that attorney-led *voir dire* is necessary to screen potential jurors for exposure to "pretrial publicity, potential hardship, and pre-judgment as to Chinese Americans, allegations of foreign involvement in United States elections, and people who support and fundraise for President Trump." Dkt. No. 36 at 17. Defendant, however, does not identify how *voir dire* conducted by a federal judge will be deficient in identifying juror bias or otherwise deprive Defendant of "effective assistance of counsel in the jury selection process and a fair and impartial jury." *Id.*

Instead, Defendant cites non-binding Fifth Circuit case law suggesting that attorney-led *voir dire* is preferable because "it is the parties, rather than the court, who have a full grasp of the nuances and the strengths and weaknesses of the case." Dkt. No. 36 at 18 (first citing *United States v. Ible*, 630 F.2d 389, 395, 395 n.8 (5th Cir. 1980); and then citing *United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980)). But permitting lawyers to select a jury "does not mean that lawyers are in the best position to select an *impartial* jury." *United States v. Montanez*, No. 23-CR-186 (NGG), 2024 WL 4582387, at *15 (E.D.N.Y. Oct. 25, 2024) (emphasis in original). As noted above, counsel's purpose in conducting *voir dire* is to select a jury "favorable to their cause—fair or not." *Lawes*, 292 F.3d at 128.

Defendant also points to studies allegedly demonstrating that potential jurors respond more candidly to questions posed by counsel and are more likely to give judges the answers they believe will be viewed as socially acceptable. *See* Dkt. No. 36 at 19. This Court, however, is confident that it will be "well aware of [its] position of authority and the effect it may have on prospective jurors, [and] will be capable of mitigating the risk of jurors telling the court what they believe it wants to hear." *Montanez*, 2024 WL 4582387, at *15; *see also Golfo*, 2020 WL 2513445, at *6

6

("Defendant also provides no . . . reason that *voir dire* conducted by a federal judge would not be just as likely, if not more likely, to yield honest answers from prospective jurors."). Further, the Court's use of sidebar for sensitive matters stands to mitigate social pressures experienced by potential jurors, and the Court's experience suggests that sidebar conferences can aid in eliciting candid responses from otherwise hesitant prospective jurors. Moreover, as stated at the September 29, 2025 hearing, the Court intends to permit counsel to propose follow-up questions, out of earshot of any prospective jurors, for the Court to pose during sidebar, should it be necessary.

An additional consideration weighing against permitting attorney-led *voir dire*, is that "court-conducted *voir dire* assures that the parties do not stray into impermissible areas that could potentially taint the prospective jurors' answers or points of view." *Saipov*, 2020 WL 958527, at *1; *see also United States v. Miah*, No. 21-CR-110 (WSH), 2021 WL 4078662, at *2 (W.D. Pa. Sept. 8, 2021) ("[T]he Court-led *voir dire* process to be employed in Defendant's case will provide sufficient constitutional safeguards to ensure that a fair and impartial jury is selected."). Indeed, "court-conducted *voir dire* also permits each party the opportunity to evaluate the questions proposed by their adversary." *Saipov*, 2020 WL 958527, at *1. "At bottom, the court is dubious that permitting defense counsel or the government to question prospective jurors would pose any real advantage[.]" *Golfo*, 2020 WL 2513445, at *7.

Defendant further contends that attorney-led *voir dire* will allow counsel to "make more efficient and better-informed use of their peremptory challenges." Dkt. No. 36 at 20. But *voir dire* conducted by a federal judge poses no barrier to the efficient and informed use of peremptory challenges. In any event, courts are not required to inquire into every subject that might assist the parties in exercising their peremptory challenges. *See Mu'Min*, 500 U.S. at 424-25 (denying

7

defendant's request to question each prospective juror about the contents of any news reports the juror had read).

Ultimately, questioning by the Court through a traditional in-court *voir dire* is plainly sufficient to identify any juror bias. And the proposed *voir dire* plan—discussed at the September 29, 2025 conference—renders attorney-conducted *voir dire* unnecessary, as the Court will be able to elicit and assess any potential bias or prejudice during jury selection.

Accordingly, the Court denies Defendant's request for attorney-led *voir dire*.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to permit the showing of the Video to prospective jurors and to permit attorney-led *voir dire*. The parties shall jointly file any proposed language concerning implicit or unconscious bias for the Court's consideration during *voir dire* by October 3, 2025, at 12:00 p.m.

Dated:     Brooklyn, New York         **SO ORDERED.**
         September 29, 2025

                                                       */s/ Joseph A. Marutollo*
                                               JOSEPH A. MARUTOLLO
                                               United States Magistrate Judge